UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-615-H

UNCLE PAUL CHIROPRACTIC BUSINESS                         PLAINTIFFS
TRAINING, LLC, *et al.*

V.

DR. ADAM L. HOOGESTRAAT, *et al.*                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Dr. Paul R. Hollern and Uncle Paul Chiropractic Business Training LLC ("Uncle Paul")

entered into a contractual arrangement with Dr. Adam Hoogestraat ("Hoogestraat"). Under this

agreement Hoogestraat participated in the "Hollern System," a business training program

designed to help him succeed as a chiropractor. The agreement also imposed certain financial

and other obligations on Hoogestraat. Uncle Paul filed suit in Jefferson County Circuit Court on

October 7, 2004, alleging that Hoogestraat had failed to pay for his participation in the Hollern

System. Hoogestraat subsequently removed the case to this Court and filed a counterclaim,

alleging that the contract was unenforceable on a variety of theories. Hoogestraat has now filed

for summary judgment on two of these theories. For the reasons discussed below, the Court

must deny this motion at this time.

I.

Hoogestraat is a licensed chiropractor. Uncle Paul is a Kentucky limited liability

company, wholly owned by Hollern. Hollern developed the "Hollern System," ("the System") a

system of business training and development courses for chiropractors. This system included

training and instruction at Uncle Paul's business premises in Louisville, and also work in chiropractic offices controlled or owned by Hollern.  At the completion of the course, Uncle Paul would finance each chiropractor who completed the course in setting up his or her practice , with Uncle Paul retaining a financial interest in the practice until the chiropractor paid back all the financed sums, as detailed in the agreement.

Hoogestraat first learned of the Hollern System while a student at Logan College in St. Louis.  Hoogestraat says that he heard a presentation about the System at Logan College, culminating with the statement: "If you want to be successful in practice and a millionaire by forty, come see me during lunch."  Hollern also advertised in Logan College's bi-monthly publication entitled *Chiropractic Arch*.  Although Hoogestraat did not enroll immediately in the program, he did so in 2003, several years after his graduation from Logan College.  Hoogestraat received training in the Hollern System from February 2003 to November 2003.

About halfway through the program, Hollern allegedly informed Hoogestraat and the other participants in the course that Hollern had only presented half of the information necessary to run a successful chiropractic practice under the Hollern System.  Hollern allegedly stated that the remainder of the Hollern System training would be withheld until the participants signed a contract.  On June 23, 2002, Hoogestraat and Hollern signed a Purchase and Management Agreement ("the Agreement").  The Agreement stated that Hollern was selling Hoogestraat a chiropractic practice and office, which was defined in the Agreement.  Hoogestraat promised to pay Hollern $395,000 plus 9% interest for the practice and "management services."  Hoogestraat was obligated to pay Hollern a percentage of his practice's revenues, and Hollern retained a security interest in the practice until he was repaid.  Hoogestraat finished the program and

2

established his own practice in Iowa in early 2004.  Hoogestraat alleges that Hollern failed to follow his contractual obligations regarding the establishment of Hollern's practice, and, therefore, Hoogestraat withheld the payments under the Agreement.

Uncle Paul eventually filed suit in Jefferson County (Kentucky) Circuit Court on October 7, 2004, seeking the $395,000 due under the Agreement plus $56,696 in alleged advancements. Hoogestraat removed the case to this Court pursuant to 28 U.S.C. § 1332.  He then filed a counterclaim alleging that violations of this state's sale of Business Opportunities statute, KRS § 367.801 *et seq.*, and its Proprietary Schools statute, KRS § 165A.320 *et seq.*, operate to invalidate the Agreement.  Hoogestraat could also claim damages under these statutes.  On October 14, 2005, Hollern filed a bankruptcy petition with the United States Bankruptcy Court of this district.  An automatic stay was imposed by action on 11 U.S.C. § 362.  This Court lifted the stay by order entered June 29, 2006.

Hoogestraat has now filed for summary judgment on his Business Opportunity and Proprietary Schools statute claims.  The Court will address each in turn.

## II.

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Wilkins v. Jakeway*, 183 F.3d 528, 532 (6th Cir. 1999).  If "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting Fed. R. Civ. P. 56(e)).

3

III.

Hoogestraat's first counterclaim concerns the Kentucky Sale of Business Opportunities statute. That statute imposes a variety of obligations and regulations upon offerors of business opportunities. First, the statute requires the promoter of a business opportunity to register with the Kentucky Division of Consumer Protection. *See* KRS § 367.805(1). Second, the statute requires the promoter to post a bond. *See* KRS § 367.805(2). Third, the statute requires the disclosure of certain information regarding the promoter and the business opportunity. *See* KRS 367.813(1). Significantly, the statute contains a specific provision regarding the effect of non-compliance. According to KRS § 367.816(6), "[u]ntil the offeror has complied with this section, the buyer may cancel the purchase of a business opportunity by notifying the offeror in any manner and by any means of his intention to cancel." Although there do not appear to be any Kentucky state cases on this particular provision, it apparently means that the offeree can cancel the contract if he proves the offeror failed to comply with the statute and evinces an intention to cancel the agreement.

The Court must determine, therefore, whether the statute covers the contract that Hollern and Hoogestraat signed. The relevant portion of the statute reads as follows:

> "Business opportunity" means the sale or lease, or offer to sell or lease, of any products, equipment, supplies, or services for the purpose of enabling the consumer investor to start a business when:
> (a) The offeror obtains an initial required consideration of not less than five hundred dollars ($500) from the purchase or lease of the business opportunity or inventory associated therewith; and
> (b) The offeror has represented, directly or indirectly, that the consumer/investor will earn, can earn, or is likely to earn a gross or net profit in excess of the initial required investment paid by the consumer/investor for the business opportunity; or
> (c)   1. The offeror has represented that he has knowledge of the relevant market and that the market demand will enable the consumer/investor to earn a profit from

4

the business opportunity; or

2. The offeror has represented that locations will be provided or assistance will be given directly or indirectly to the consumer/investor in finding locations for the use or operation of the business opportunity including, but not limited to, supplying the consumer/investor with names of locator companies, contracting with the consumer/investor to provide assistance with or supply names of or collect a fee on behalf of or for a locator company; or

3. The offeror has represented that there is a guaranteed market or that the offeror will buy back or is likely to buy back any product made, manufactured, produced, fabricated, grown, or bred by the consumer/investor using, in whole or in part, the products, supplies, equipment, or services which were initially sold or offered for sale to the consumer/investor by the offeror.

KRS § 367.801(5).  Unfortunately, there are no Kentucky cases interpreting these requirements. However, this Court interprets this statute in the following way: to be a "business opportunity," the transaction must meet the requirements of clause (a) *and either* the requirements of clause (b), (c)(1), (c)(2), or (c)(3).  The minimum $500 of consideration seems to be a threshold requirement and it is entirely different from the other clauses in this section of the statute.  On the other hand, clauses (b), (c)(1), (c)(2), and (c)(3) discuss alternative representations the offeror could make, all satisfying the statutory definition.  Therefore, to void the Agreement under section 367.801 *et seq.*, Hoogestraat must satisfy the requirements of section 367.801(5)(a) and at least one of the following: sections 367.801(5)(b), 367.801(5)(c)(1), 367.801(5)(c)(2), or 367.801(5)(c)(3).

The threshold question here appears to be whether this transaction satisfied the requirements of section 367.801(5)(a).  In the Reply brief on this motion, Hoogestraat's counsel sweeps aside the possibility that the statute could be interpreted in this manner.  However, elsewhere he suggests that Hoogestraat made an initial $1000 deposit for the Hollern System in November 2002.  If that were proven true, that deposit might satisfy the requirement of section 367.801(5)(a).  Hoogestraat's proof of the $1000 deposit at this point is three-fold: first, the fact

5

that Hollern said that a $1000 deposit was required during a videotaped presentation at Logan College; second, Hoogestraat's handwritten checkbook ledger allegedly showing that a $1000 check to Uncle Paul was written sometime in November 2002; and third, the Hoogestraat's affidavit stating that he paid a $1000 deposit to Hollern.  All of this evidence seems to support a conclusion that a $1000 deposit was made.

However, there are some discrepancies: Hoogestraat's check register does not show that he deducted $1000 from his checking account after writing the check, for instance, nor does it appear that Hoogestraat had a sufficient balance in his account to clear a $1000 check.  It certainly seems possible – although unlikely considering the subsequent history of this case – that Hoogestraat sent in a $1000 check to Hollern as a deposit, and that Hollern never cashed the check in anticipation of Hoogestraat's future payments.

Leaving aside altogether the question of whether this type of transaction would satisfy section 367.801(5)(a), the Court finds that a genuine issue of material fact exists as to whether Hoogestraat provided to necessary consideration for this transaction to meet the threshold requirements of section 367.801(5)(a).  Therefore, the Court must deny summary judgment at this time.  The Court remains open to entertaining further motions from either side after appropriate discovery.

IV.

Hoogestraat's next counterclaim is under the Proprietary School Statute.  The question presented there is whether the "Hollern System" qualifies as a "proprietary school."  The relevant statute defines a proprietary school as:

> a privately owned educational institution, establishment, agency, organization, or person offering or administering a plan, course, or program of instruction in business, trade,

6

technical, industrial, or related areas for which a fee or tuition is charged whether conducted in person, by mail, or by any other method.

KRS § 165A.310(1).  The statute says that any person operating a proprietary school must obtain a license from the State Board of Proprietary Education.  *See* KRS § 165A.330(1).  The statute provides that no contract relating to payment for education at a proprietary school is enforceable if the proprietary school has failed to comply with the statutory requirements.  *See* KRS 165A.990(2).  Uncle Paul's did not have a license from the State Board of Proprietary Education. Therefore, if it was a "proprietary school" as defined by the statute, the Agreement could be voided on those grounds.

However, having reviewed carefully the Agreement and the circumstances surrounding it, the Court concludes that it would unduly strain the confines of section 165A.310(1) to characterize the transaction and relationship between Hoogestraat and Hollern/Uncle Paul as one between a student and "proprietary school."  Two principal factors convince the Court that this is the case.  First, the amount of money to be paid by Hoogestraat to Hollern under the Agreement was $395,000.  Four years of undergraduate education at the nation's premier universities would not cost nearly as much.[1]  The sheer quantity of the money changing hands under the Agreement suggests that the Agreement constituted something more than a contract for education in a proprietary school.  Second, the language of the Agreement itself does not support the argument that the Hollern System constituted a "proprietary school."  Certainly, knowledge was imparted from Hollern to his students and money exchanged hands (or should have, according to the terms

---

[1] *See, e.g.*, Whitney Gruenloh, *Board of Visitors approves tuition aligned with six-year plan*, The Cavalier Daily, Apr. 24, 2006 (reporting that total undergraduate out-of-state tuition and fees at the University of Virginia would total $33,052 for the 2006-07 academic year); Evan Jacobs, *Tuition Set to Rise 4.75%  Next Year*, The Harvard Crimson, Mar. 24, 2006 (reporting that overall undergraduate tuition at Harvard University would total $43,655 for the 2006-07 academic year).

7

of the Agreement).  However, the relationship between Hollern and Hoogestraat is more analogous to a franchiser-franchisee relationship.  Education and training were involved, but the relationship between the parties was essentially a business relationship.  The Agreement itself is titled "Purchase and Management Agreement" and its preamble indicates a purpose of Hollern selling Hoogestraat a chiropractic office.  It would badly strain the bounds of the statute to characterize the Agreement as one for education in a "proprietary school."

For these reasons, the Court will deny Hoogestraat's motion for summary judgment on his Proprietary School statute claim.  In fact, the Court would entertain a motion to dismiss that claim.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is DENIED. The Court will set a conference in the near future.  This is not a final order.

cc:     Counsel of Record